UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

STEVEN MARSH                                    CIV. ACTION NO. 5:22-05338 SEC. P

VERSUS                                          JUDGE JERRY EDWARDS, JR.

D.W.C.C., ET AL.                                MAG. JUDGE KAYLA D. MCCLUSKY

### REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion for summary judgment [doc. # 62] filed by Defendants, Linda Bunch and Daniel Crook. The motion is unopposed.  For reasons detailed below, it is recommended that the motion be GRANTED IN PART and DENIED IN PART.

### Background

Plaintiff Steven Marsh ("Marsh"), who, during the relevant period, was a Department of Corrections inmate housed at the David Wade Correctional Center ("DWCC") near Homer, Louisiana, is proceeding in forma pauperis and representing himself in this matter.  He filed the instant civil rights complaint pursuant to 42 U.S.C. § 1983 on September 23, 2022, against various Defendants, including, as pertinent here, two physicians at the DWCC:   Dr. Linda Bunch ("Dr. Bunch" or "Bunch") and Dr. Daniel Crook ("Dr. Crook" or "Crook").  Marsh essentially contends that Drs. Bunch and Crook delayed scheduling his appointment with a neurologist that was necessary to address a progressively worsening cyst, which caused him to suffer substantial harm, including numbness, loss of functioning in the lower extremities, incontinence, and pain.  *See* Jan. 31, 2023 Report and Recommendation ("R&R") [doc. # 13].  Marsh seeks $50 million in compensatory damages.  *Id*.

On March 10, 2023, following an initial review of the record, and as reflected in the

attendant R&R, the Court dismissed all of Marsh's claims against the myriad Defendants but retained his Eighth Amendment and state law medical malpractice claims against Drs. Crook and Bunch. *See* March 10, 2023 Order and R&R [doc. #s 19 & 13, respectively].[1]  In the R&R, the Court distilled Marsh's surviving claims against Drs. Bunch and Crook, as follows:

> [Plaintiff] alleges that on November 2, 2020, hospital physicians sent Drs. Bunch and Crook "paperwork saying that [he] needed to see the neurologist as soon as [he] could." [doc. # 1-2, p. 5].  He submitted numerous requests for care concerning pain in his feet, back, and "backside" from  September 2019 to February 2022. [doc. # 1-2, pp. 13-14].  He then endured a delay from November 2, 2020, after five physicians recommended or prescribed a neurologist's care, to December 1, 2021, when he first met with a neurologist.  He appears to attribute the delay to Bunch and Crook's deliberate indifference and/or to decision to forego treatment due to the cost.
> Plaintiff also . . . maintains that he would not "be in this shape today" absent the delay.  [doc. # 12, p. 3].  Dr. Camarano told him that his symptoms are "progressively getting worse because the cyst was allowed to grow unchecked for an extremely long period of time and the damage was already done by the time he operated." [doc. # 7, p. 3].
> Plaintiff also raises plausible state law medical malpractice claims against Bunch and Crook, alleging that they failed to timely discover his spinal cyst in his available medical records and treat him accordingly.

(R&R, pgs. 10-12 [doc. # 13]).

On May 31, 2023, Crook and Bunch (collectively, "Defendants") filed a motion to dismiss Marsh's claims pursuant to Rule 12(b) and Rule 12(b)(6), for the following reasons:  (1) Marsh failed to exhaust administrative remedies prior to filing suit; (2) Marsh failed to state a claim for deliberate indifference; and (3) qualified immunity.  [doc. # 25].  On September 6, 2023, the undersigned issued an R&R recommending that the motion to dismiss be denied. (Sept. 6, 2023 R&R [doc. # 34]).  In the R&R, the Court observed that Marsh sued Defendants in

---

[1] The Court ordered service on Crook and Bunch, which the U.S. Marshal Service perfected on March 27, 2023.  *See* doc. #s 14 & 20.

2

both their individual and official capacities. *Id*.; see doc. # 28-1, pg. 10.  The District Court adopted the R&R on November 18, 2024.  (Order [doc. # 49]).

On January 17, 2025, Defendants filed their Answer.  [doc. # 50].  Amongst other defenses, they invoked sovereign immunity under the Eleventh Amendment, which bars suit against state officials and employees who are sued in their official capacities for monetary damages. *Id*.

On January 17, 2025, the Court issued a scheduling order that set forth deadlines in the case, including a dispositive motion deadline that was extended on three occasions upon motions filed by Defendants. *See* doc. #s 51, 52-53, 58-59, 60-61.  The latest extension resulted in a November 19, 2025 deadline for the parties to file either a motion for summary judgment or a statement of issues.  [doc. # 61].

On November 19, 2025, Defendants filed the instant motion for summary judgment seeking dismissal of Marsh's claims on the grounds that, (1)  there is no evidence to support any of his claims; (2) the state law medical malpractice claims are premature; (3) Marsh failed to exhaust available administrative remedies; and (4) Defendants are entitled to qualified immunity.

Marsh did not file a motion for summary judgment, a statement of issues, or a response to Defendants' motion for summary judgment.  Furthermore, the time to do so has passed. *See* E-Order [doc. # 61 and Notice of Motion Setting [doc. # 63].  Accordingly, the motion is deemed unopposed. *Id*.  The matter is ripe.

### <u>Analysis</u>

As stated above, Marsh sued Defendants in their individual and official capacities. However, Defendants' motion for summary judgment does not directly address Marsh's official

3

capacity claims, and the Court cannot extend the primarily merits-related arguments to claims that otherwise are barred by Eleventh Amendment sovereign immunity. *See Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 188 (5th Cir. 1986) (inconsistent for court to issue a judgment on the merits when it lacks subject matter jurisdiction); *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 333 (5th Cir. 2002) (court need not address merits of the claim because the claim is barred by Eleventh Amendment immunity).

Nonetheless, Defendants raised sovereign immunity in their Answer. *See* discussion, *supra*. Moreover, even if a defendant does not argue sovereign immunity in its motion, a court may raise the issue sua sponte because it bears on the court's subject matter jurisdiction. *Perez*, 307 F.3d at 333 n.8; *Carver v. Atwood*, 18 F.4th 494, 497 (5th Cir. 2021) (sua sponte dismissal is mandatory because sovereign immunity is a jurisdictional bar). Accordingly, the court first must address the issue of sovereign immunity.

I.       **Official Capacity Claims**

         a)       Standard of Review

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers local 6 Pension Fund*, 81 F.3d 1182, 1187 (2nd Cir. 1996)). The party seeking to invoke jurisdiction bears the burden of demonstrating its existence. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). "[T]here is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court." *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996) (citation omitted).

"A court can find that subject matter jurisdiction is lacking based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Enable Mississippi River Transmission, L.L.C. v. Nadel & Gussman, L.L.C.*, 844 F.3d 495, 497 (5th Cir. 2016) (citations and internal quotation marks omitted).

b)    Law and Analysis

It is well settled that the Eleventh Amendment bars citizens of a state from suing their own state, another state, or a state agency or department in federal court, unless the state has waived its sovereign immunity or Congress has expressly abrogated it. *Raj v. Louisiana State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013) (citations omitted); *Darlak v. Bobear*, 814 F.2d 1055, 1059 (5th Cir. 1987) (citation omitted). The Eleventh Amendment bars suits for both money damages and injunctive relief against a state entity. *Darlak*, 814 F.2d at 1059 (citation omitted). It also precludes federal courts from hearing state law claims brought in federal court against state entities. *Raj*, 714 F.3d at 329 (citing *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 117 (1984)); *Richardson v. Southern University*, 118 F.3d 450, 453 (5th Cir. 1997).

In addition, it is manifest that 42 U.S.C. § 1983 does not abrogate a state's sovereign immunity. *Hanna v. LeBlanc*, 716 Fed. App'x. 265, 268 (5th Cir. 2017); *Richardson*, 118 F.3d at 453; *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989). In fact, § 1983 claims may only be asserted against persons, and "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will*, 491 U.S. at 58. Moreover, Louisiana has refused to waive its Eleventh Amendment immunity from suit in federal court. LA. R.S. § 13:5106(A) (providing that "[n]o suit against the state or a state agency or political subdivision shall be instituted in any court

5

other than a Louisiana state court."); *Delahoussaye v. City of New Iberia*, 937 F.2d 144, 147 (5th Cir. 1991); *Raj*, 714 F.3d at 329.

With respect to Marsh's claims against Defendants in their official capacities, it is manifest that official capacity suits, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105 (1985) (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 2035, n. 55 (1978)). Thus, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id*. Consequently, the Eleventh Amendment bars suit against state officials and employees of state entities, acting in their official capacities. *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010) (citations omitted); *Green v. State Bar of Texas*, 27 F.3d 1083, 1087-88 (5th Cir. 1994) (plaintiff cannot evade Eleventh Amendment by suing state employees in their official capacity); *Brown v. McLane*, 807 Fed. App'x. 410, 411 (5th Cir. 2020) (Eleventh Amendment bars federal constitutional claims for damages *and* state-law claims, regardless of the form of relief sought against state agency head, in her official capacity) (citation omitted).

The DWCC is a state agency subject to Eleventh Amendment protection. *Johnson v. David Wade Corr. Ctr.*, Civ. Action No. 08-0903, 2010 WL 1688435, at *3 n.7 (W.D. La. Apr. 23, 2010), *aff'd sub nom. Johnson v. David Wade Corr. Facility*, 410 Fed. App'x. 735 (5th Cir. 2010). Thus, Marsh's claims against Defendants, in their official capacities, are, in effect, claims against a state agency, which are barred by the Eleventh Amendment.

There is, of course, a caveat to the foregoing. The *Ex Parte Young* doctrine recognizes an exception to Eleventh Amendment immunity for claims of prospective injunctive or declaratory

relief against a state official. *Ex Parte Young*, 209 U.S. 123 (1908). Stated differently, "prospective injunctive or declaratory relief against a state [official] is permitted . . . but retrospective relief in the form of a money judgment in compensation for past wrongs . . . is barred." *Nelson v. Univ. of Texas at Dallas*, 535 F.3d 318, 322 (5th Cir. 2008) (citation omitted). Here, however, Marsh's requested relief is limited to monetary damages to redress a past wrong.

In sum, the court lacks jurisdiction to proceed against Defendants in their official capacities. Accordingly, Marsh's official capacity claims against Defendants are subject to dismissal without prejudice. *Carver*, 18 F.4th at 498; *Warnock v. Pecos County, Tex.*, 88 F.3d 341, 343 (5th Cir. 1996) (citing FED. R. CIV. P. 12(b)(1)).[2]

## II.     Individual Capacity Claims

### a)      Standard of Review

Summary judgment is appropriate when the evidence before the court shows "that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(b). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

---

[2] The court possesses the inherent authority to dismiss a party or claim *sua sponte*. *McCullough v. Lynaugh*, 835 F.2d 1126, 1127 (5th Cir. 1988) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)); *McCoy v. Wade*, 2007 WL 1098738, *1 (W.D. La. Mar. 12, 2007) (the report and recommendation itself provides adequate notice to the parties); *Thomas v. Texas Dept. of Family and Protective Services*, 427 Fed. App'x. 309 (5th Cir. 2011) (sua sponte dismissal on 11th Amendment grounds).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support his claim, summary judgment is appropriate. *Id.* "No genuine [dispute] of material fact exists if the summary-judgment evidence is such that no reasonable juror could find in favor of the nonmovant." *Jenkins v. Methodist Hospitals of Dallas, Inc.*, 478 F.3d 255, 260 (5th Cir. 2007) (citation omitted).

In evaluating the evidence tendered by the parties, the court must accept the evidence of the non-movant as credible and draw all justifiable inferences in his favor. *Anderson*, 477 U.S. at 255. While courts will "resolve factual controversies in favor of the non-moving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). There can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-323. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

8

Finally, when a movant bears the burden of proof on an issue, he must establish "beyond peradventure[3] all of the essential elements of the claim . . . to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). In other words, the movant must affirmatively establish his right to prevail as a matter of law. *Universal Sav. Ass'n v. McConnell*, 14 F.3d 52 (5th Cir. 1993).

    b)    <u>Exhaustion</u>

Defendants raised the issue of Marsh's alleged failure to exhaust administrative remedies under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, near the conclusion of their motion for summary judgment. *See* MSJ, Memo., pg. 8. It is manifest, however, that "exhaustion is a *threshold* issue that courts must address to determine whether litigation is being conducted in the right forum at the right time . . . *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010) (emphasis added). Indeed, pursuant to 42 U.S.C. § 1997e, as amended by the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory and is required even where the relief sought cannot be granted by the administrative process. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (citations omitted). All "available" remedies must be exhausted, whether speedy and effective, or not. *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

Defendants initially raised their exhaustion defense in their prior Rule 12(b) motion. *See* doc. # 25. While the Court denied dismissal on exhaustion grounds previously because it

---

[3] I.e., beyond doubt.

9

required consideration of evidence beyond the pleadings, the Court further observed that the record did not suffice to establish the exhaustion defense because Defendants had not submitted any evidence regarding the DWCC's *available* grievance procedures. *See* R&R [doc. # 34]. It is defendants' burden to establish that there were available procedures that the inmate did not exhaust, and it is error for the district court not to hold them to their proof. *Cantwell v. Sterling*, 788 F.3d 507, 509 (5th Cir. 2015). Plainly stated, "[w]ithout knowing what the applicable grievance procedures say, it's impossible to determine whether [the inmate] exhausted them." *Prescott v. Plybol*, 855 Fed. App'x. 952, 953–54 (5th Cir. 2021) (quoting *Cantwell*, 788 F.3d at 509).

As with their prior Rule 12(b) motion, Defendants still have not adduced evidence to establish the DWCC's available grievance procedures. Therefore, their unsupported PLRA exhaustion defense necessarily suffers the same fate as before. *See Burnette v. Bureau of Prisons*, 2009 WL 1650072, *3 (W.D. La. June 10, 2009) (exhaustion defense not established by unsupported allegations).

    c)    <u>Individual Liability under § 1983</u>

        i)    *General Principles*

Section 1983 provides that any person who, under color of state law, deprives another of "any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ." *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citing 42 U.S.C. § 1983). Section 1983, however, does not create any substantive rights; it simply provides a remedy for the rights designated therein. *Id*. "Thus, an underlying constitutional or statutory violation is a predicate to

10

liability under § 1983." *Id*. (citation omitted).

To state a cognizable claim for relief under 42 U.S.C. § 1983, "a plaintiff must plead two—and only two—allegations . . . First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Arnold v. Williams*, 979 F.3d 262, 266-67 (5th Cir. 2020) (citation and internal quotation marks omitted).

### ii)   *Qualified Immunity*

In addition, when, as here, a plaintiff seeks money damages from government officials in their individual capacities under § 1983, the affirmative defense of qualified immunity is available to protect defendants "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The qualified immunity doctrine balances two often conflicting interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id*. As such, "[t]he protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id*. (citations and internal quotation marks omitted). In effect, qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000) (citing *Malley v. Briggs,* 475 U.S. 335, 343, 341, 106 S.Ct. 1092 (1986) (internal quotation marks omitted).

11

Qualified immunity is nominally characterized as an affirmative defense.  However, once raised by a defendant, it devolves upon the plaintiff to negate the defense by showing that the official's conduct violated clearly established law.  *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (citation omitted).  Plaintiff's burden is two-pronged.  *Club Retro LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (quoted sources omitted).  First, a plaintiff must demonstrate that defendant(s) violated a constitutional right under current law.  *Id*.  "Second, [plaintiff] must claim that the defendant[s'] actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of."  *Id*.  (quoted source and internal quotation marks omitted).  The courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand."  *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (citation omitted).

In the peculiar context of a motion for summary judgment, "once [the court has] determined the relevant set of facts and drawn all inferences in favor of the nonmoving party to the extent supportable by the record, the reasonableness of [an officer's] actions . . . is a pure question of law."  *Scott v. Harris*, 550 U.S. 372, 397, n.8 (2007).  Consequently, the Fifth Circuit has recognized that,

> when facts are undisputed and no rational factfinder could conclude that the officer acted unreasonably, we can hold that an officer acted reasonably as a matter of law.  But when facts are disputed and significant factual gaps remain that require the court to draw several plaintiff-favorable inferences, our analysis is more tentative.  In these cases, we must consider what a factfinder could reasonably conclude in filling these gaps and then assume the conclusion most favorable to the plaintiff.

*Lytle v. Bexar Cty., Tex.*, 560 F.3d 404, 411–12 (5th Cir. 2009) (internal citation omitted).

In other words, there is no constitutional violation if – even after crediting the version of facts most favorable to plaintiff – the officer's conduct was objectively reasonable. *Id*.

Analytically, qualified immunity on summary judgment differs from a motion to dismiss because in the former situation, "the plaintiff can no longer rest on the pleadings . . . and [instead] the court looks to the evidence before it . . ." *Langiano v. City of Fort Worth, Texas*, 131 F.4th 285, 292 (5th Cir. 2025) (ultimately quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)).

iii)     *Delayed and/or Inadequate Medical Care*

"A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when h[er] conduct demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an 'unnecessary and wanton infliction of pain.'"[4] *Delaughter v. Woodall*, 909 F.3d 130, 136 (5th Cir. 2018) (citations omitted).  Thus, to establish liability for inadequate medical care under the Eighth Amendment, an inmate must adduce facts which "clearly evince" a serious medical need and the prison official's deliberate indifference to it. *Hernandez v. Velasquez*, 522 F.3d 556, 561 (5th Cir. 2008) (citation omitted); *see also Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

---

[4] As a convicted prisoner for the period at issue, Marsh's rights derive from the Eighth Amendment.  *Baughman v. Hickman*, 935 F.3d 302, 306 (5th Cir. 2019) ("The Eighth Amendment ensures the safety of convicted prisoners while due process under the Fourteenth Amendment protects pretrial detainees") (citation omitted).  However, the Eighth Amendment is made applicable to the States through the Fourteenth Amendment. *Kennedy v. Louisiana*, 554 U.S. 407, 419, *opinion modified on denial of reh'g,* 554 U.S. 945 (2008).  The Fifth Circuit's Fourteenth Amendment case law concerning pretrial detainees is based on the same Supreme Court Eighth Amendment precedent pertaining to prisoners.  *Garza v. City of Donna*, 922 F.3d 626, 634 (5th Cir. 2019).  Ultimately, then, "there is no significant distinction between pretrial detainees and convicted inmates concerning basic human needs such as medical care." *Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001).

Furthermore, "[t]o succeed on a deliberate-indifference claim, plaintiffs must show that (1) the official was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and (2) the official actually drew that inference." *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (citations and internal quotation marks omitted); *see also Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 330 (5th Cir. 2016) (quoting *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)).  A prison official acts with deliberate indifference to an inmate's health "only if [s]he knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *see also Delaughter*, 909 F.3d at 136 (applying *Farmer* to a denial of medical care claim).  "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006).

A plaintiff must establish that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert*, 463 F.3d at 346. "[N]either an incorrect diagnosis nor the failure to alleviate a significant risk that should have been perceived, but was not, is sufficient to establish deliberate indifference." *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016).  "Thus, mere disagreement with one's medical treatment is insufficient to show deliberate indifference, as are claims based on unsuccessful medical treatment, negligence, or medical malpractice." *Delaughter*, 909 F.3d at 136 (citations omitted). Moreover, "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989

14

F.2d 191, 195 (5th Cir. 1993). Continuous medical care ordinarily precludes a finding of deliberate indifference on the part of prison officials. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995); *Mayweather v. Foti*, 958 F.2d. 91 (5th Cir. 1992).

In sum, "[d]eliberate indifference is an extremely high standard to meet . . ." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *see Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference.").

iv)    *Discussion*

As with their prior motion to dismiss, Defendants rely on Marsh's treatment records to show that he received continuous medical care at the DWCC, and, consequently, they were not deliberately indifferent to his medical needs. In the R&R addressing Defendants' motion to dismiss, the Court observed that Marsh did not dispute that Defendants provided him with some measure of care, the issue was that they delayed his need for a neurology consult and, concomitantly, his neurosurgery for over one year. (R&R, pg. 12 [doc. # 34]).

This time, however, the posture of the case has changed, and, to defeat summary judgment, Marsh cannot rest on his pleadings. In their motion, Defendants pointed not only to Marsh's continuous medical care, but also to his lack of any witnesses, medical records, documentation, experts, or medical evidence to support his claims. In his answers to interrogatories, Marsh stated that his only witness was an expert but then added that he did not know the name(s) of any expert or medical doctor who had provided him with an opinion concerning any matter in the litigation. *See* Pl. Ans. to Defs. 1st Set of Interr.; MSJ, Exh. [doc. # 62-7]. Without an expert medical opinion establishing causation, i.e., that a delay in treatment

15

caused his injury, Marsh cannot meet a requisite element of his claim. *Stuart v. Wexford Health Sources, Inc.*, Civ. Action No. 09-0054, 2012 WL 4101911, at *2 (S.D. Miss. Sept. 17, 2012); *Flores v. Jaramillo*, 389 Fed. App'x. 393, 395–96 (5th Cir. 2010) (plaintiff offered no evidence from which it could be inferred that a delay in treatment caused substantial harm); *Matthews v. Fleming*, Civ. Action No. 05-1408, 2010 WL 669447, at *4 (N.D. Tex. Feb. 25, 2010) (plaintiff did not produce any competent expert testimony to show that any delay in performing surgery caused any permanent injury).

In addition, in response to the summary judgment motion, Marsh did not adduce evidence to show that Defendants actually were aware of his immediate need for surgery and that any significant delay could result in serious harm. Ultimately, Marsh is left with unsupported assertions from his pleadings. At this stage of the proceedings, unsubstantiated assertions do not suffice; rather, the party opposing summary judgment must identify specific evidence in the record to support his claim. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). It is incumbent upon plaintiff to demonstrate disputed facts relevant to the determination of defendant's alleged deliberate indifference, which when resolved in plaintiff's favor suffices to defeat qualified immunity. *Gobert*, 463 F.3d at 348.

Here, Marsh did not respond to the summary judgment motion and, necessarily, has failed to meet his burden to adduce evidence to support a finding that Defendants violated a constitutional right under current law. Accordingly, there is no genuine dispute as to a material fact and Defendants are entitled to qualified immunity as to Marsh's claims under federal law.[5]

---

[5] The Court's having resolved liability under qualified immunity's first prong, it need not consider qualified immunity's second prong.

d)      Medical Malpractice Claim under State Law

Without citation to any authority, Defendants urge the Court to dismiss Marsh's state law medical malpractice claims because he failed to submit the claims to a medical review panel. Instead, when, as recommended here, all claims which conferred federal subject matter jurisdiction are dismissed, the court may decline to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3). In fact, this is the general rule. *Priester v. Lowndes County*, 354 F.3d 414, 425 (5th Cir. 2004) (citation omitted). The twin interests of comity and efficiency dictate that any remaining state law claims be dismissed without prejudice. 28 U.S.C. § 1367(c).[6]

### Conclusion

For the above assigned reasons,

IT IS RECOMMENDED that the motion for summary judgment [doc. # 62] filed by remaining Defendants, Linda Bunch and Daniel Crook, be GRANTED IN PART and DENIED IN PART. To the extent that Defendants move for dismissal of Plaintiff Steven Marsh's claims against them in their individual capacities, arising under the laws and Constitution of the United States, IT IS RECOMMENDED that the motion be GRANTED, and these claims be DISMISSED WITH PREJUDICE. IT IS RECOMMENDED that the motion for summary judgment [doc. # 62] otherwise be DENIED.

IT IS FURTHER RECOMMENDED that Plaintiff Steven Marsh's federal and state law claims against Defendants, Linda Bunch and Daniel Crook, in their official capacities, be

---

[6] The limitations period is tolled for a minimum of 30 days after dismissal. *See* 28 U.S.C. § 1367(d).

17

DISMISSED WITHOUT PREJUDICE.  Finally,

IT IS FURTHER RECOMMENDED that Plaintiff Steven Marsh's remaining state law claims against Defendants, Linda Bunch and Daniel Crook, in their individual capacities, be DISMISSED WITHOUT PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 3rd day of March, 2026.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE

18